IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-426 |
| | ) | |
| FORT LOUDOUN ELECTRIC | ) | |
| COOPERATIVE and | ) | |
| THE FORT LOUDOUN ELECTRIC | ) | |
| COOPERATIVE HEALTHCARE PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff is a former employee whose February 2005 application for long term disability benefits was eventually granted, but not until *after* he was fired in May 2005 for purported misconduct. He now seeks reinstatement of his employer-sponsored health insurance pursuant to an alleged unwritten ERISA plan allegedly providing that retroactive benefit.

Now before the court are the motions for judgment filed by the defendants [doc. 19] and by the plaintiff [doc. 31], along with the parties' responsive briefing to those motions. For the reasons stated herein, defendants' motion will be granted, plaintiff's motion will be denied, and this civil action will be dismissed.

I.

*Background*

Defendant Fort Loudoun Electric Cooperative ("FLEC") is a participant in the National Rural Electric Cooperative Association Long Term Disability Plan ("the LTD Plan"). Cooperative Benefit Administrators, Inc. ("CBA") is the LTD Plan claims administrator, and the plan administrator is the Senior Vice President of Insurance and Financial Services for the National Rural Electric Cooperative Association ("NRECA"). FLEC also participates in a group health insurance plan ("the Health Insurance Plan") offered by BlueCross BlueShield of Tennessee. To enroll in the Health Insurance Plan, a person must be a full-time employee who is actively at work.

Plaintiff was formerly employed by FLEC as an engineering supervisor until he was fired for alleged dishonesty on May 2, 2005. While employed, plaintiff was a participant in both the LTD Plan and the Health Insurance Plan. By letter dated May 2, 2005, FLEC notified plaintiff that his health insurance coverage had been terminated and that he was eligible for continued coverage under COBRA.

On February 22, 2005 (more than two months prior to his termination), plaintiff submitted a claim for LTD benefits. During the pendency of the administrative review of that claim, plaintiff's counsel wrote to FLEC asking, *inter alia*, "whether there are any other benefits to which our client could be entitled if our client is disabled." FLEC's counsel responded to the inquiry by providing hundreds of pages of materials. Among those

papers are two pages which, collectively, state in full,

> Any Fort Loudoun Electric Cooperative employee who becomes disabled while working full time for the cooperative is entitled to a waiver of health insurance premiums for the individual or family coverage for the entire time the employee is deemed disabled by our long term disability carrier.
>
> No additional forms must be filled out. The benefit of waiver of health insurance premiums, life insurance continuation and retirement continuation is all contingent upon approval of long term disability benefits by CBA.

Defendants' interrogatory responses in the current case make clear that the above-quoted pages are not company or plan documents but instead are the statements of their attorney.

CBA denied plaintiff's LTD claim at all levels of administrative review. In December 2007, plaintiff appealed that denial to this court in a case (3:07-CV-477) presided over by United States District Judge Thomas W. Phillips. The case was settled by the parties (plaintiff and the NRECA Group Benefits Program) in August 2008. By the terms of the settlement agreement, plaintiff was deemed disabled during the LTD Plan's initial 24-month "own occupation" period, and the matter was remanded for CBA to determine whether disability continued under the LTD Plan's post-24-month "any occupation" standard. In material part, the settlement agreement further provided that the LTD Plan

> has no control over [plaintiff's] employment status with [FLEC] and therefore cannot and does not offer any representations or assurances as to [plaintiff's] possible eligibility for health insurance benefits or any other employment benefits, including employment benefits for which eligibility is dependent on employment status.

On January 8, 2009, CBA notified plaintiff that he satisfied the "any occupation" disability standard and that his LTD payments would therefore continue.

3

Plaintiff then asked that FLEC reinstate his health insurance coverage. By letter dated January 27, 2009, FLEC through its CEO Jim Kendrick denied that request. The letter provided,

> It has been reported to me you have requested the Cooperative to extend coverage to you and your family under our health insurance plan for our existing employees. Apparently, you have pointed to an alleged practice of covering disabled employees who have qualified for long term disability with the Cooperative's independent LTD carrier.
>
> The Cooperative has no written or other formal policy covering the situations you have alleged. Notwithstanding the alleged existence of a policy or practice, your situation is totally different from any other prior employee due to the fact that you were actually terminated from employment on May 2, 2005[,] for a violation of FLEC's Board Policy 201A (Rules of Conduct and Performance).
>
> Accordingly, under these circumstances, the provision of continued health insurance is not available to you.

On April 20, 2009, citing the materials previously provided to him by FLEC's attorney, plaintiff again requested retroactive reinstatement of his health insurance. Two days later, through a letter from counsel, FLEC again denied the request. Focusing exclusively on the settlement agreement, the letter provided in material part,

> In reviewing the Settlement Agreement and Release signed by [plaintiff] and NRECA, I note the Settlement Agreement between [plaintiff] and NRECA specifically excluded any questions concerning [plaintiff's] possible eligibility for health insurance benefits . . . .

> . . . FLEC's position remains the same as indicated in Mr. Kendrick's letter of January 27, 2009. My reading of the Settlement Agreement and Release is that it expressly excludes any reference to [plaintiff's] eligibility for health insurance and FLEC is not bound in any manner by an agreement made by [plaintiff] and NRECA group benefits program.

The present appeal followed. Defendants, through their interrogatory responses in this case, have stated,

> FLEC has no written or other formal policy [regarding continued healthcare coverage for LTD beneficiaries]. FLEC has an unwritten practice that any current [FLEC] employee is entitled to a waiver of health insurance premiums for the individual or family coverage for the entire time the employee is deemed disabled by FLEC's long term disability carrier.
>
> . . .
>
> FLEC pays 100% of the health insurance premiums for current employees for the entire time the employee is deemed disabled. FLEC does not pay health insurance premiums for any former employees.

II.

*Analysis*

A. Plan

This is not a breach of contract case. Plaintiff's one-count complaint is brought under ERISA for enforcement of the terms of an alleged employee benefits plan.

ERISA governs employee benefit *plans*, not mere *benefits*. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987). "ERISA does not purport to cover all programs that benefit employees. Instead, its coverage is limited to employee welfare benefit plans." *Sherrod v. Gen. Motors Corp.*, 33 F.3d 636, 638 (6th Cir. 1994).

5

ERISA's definition of "employee welfare benefit plan" encompasses "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical . . . benefits . . . ." 29 U.S.C.A. § 1002(1). An ERISA plan need not be formal or even written. *See Fugarino v. Hartford Life & Accident Ins.*, 969 F.2d 178, 185 (6th Cir. 1992), *abrogated on other grounds by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004).

Plaintiff does not argue (nor in the court's mind could he argue) that he is entitled to retroactive reinstatement of his health insurance under any provision of the LTD Plan or the Health Insurance Plan. Plaintiff has cited no controlling provision of either plan, nor has he sued those entities or their administrators.

Instead, plaintiff argues that the defendants' admitted "unwritten practice" of waiving health insurance premiums is itself an ERISA plan under which he is covered. Plaintiff further argues that the parameters of that unwritten plan are established by the summary statements of defendants' attorney. As quoted above, the statements relied upon by plaintiff provide in full,

> Any Fort Loudoun Electric Cooperative employee who becomes disabled while working full time for the cooperative is entitled to a waiver of health insurance premiums for the individual or family coverage for the entire time the employee is deemed disabled by our long term disability carrier.
>
> No additional forms must be filled out. The benefit of waiver of health insurance premiums, life insurance continuation and retirement continuation is all contingent upon approval of long term disability benefits by CBA.

According to plaintiff, these two paragraphs set the terms of an otherwise unwritten ERISA plan. In plaintiff's opinion he was - eventually - approved for LTD benefits by CBA and thus "bec[ame] disabled while working full time for the cooperative." Plaintiff further argues that any ambiguities in the alleged plan (*i.e.*, when the disability determination becomes effective and whether the benefit applies to subsequently fired employees) must be construed against the employer, thereby entitling him to the desired relief. The defendants obviously disagree. They contend that the "unwritten practice" is not an ERISA plan and, in any event, that former employees cannot receive the benefit.

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996). In *Thompson*, the Sixth Circuit established a three-part test for use "[i]n determining whether a plan is an ERISA plan." *See id.* at 434-35. Arguably, albeit hypertechnically, the instant plaintiff could satisfy *Thompson*'s three prongs.

*Thompson* is "*normally* used to determine if there is an ERISA benefits plan." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006) (emphasis added). However, there is more. "The hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation.'" *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995) (quoting *Fort Halifax*, 482 U.S. at 11).

7

> In determining whether an ERISA plan exists, '[t]he pivotal inquiry is whether the plan requires an establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such a scheme; rather an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.'

*Swinney*, 46 F.3d at 517 (quoting *Sherrod*, 33 F.3d at 638) (citation omitted).

*Swinney*'s "hallmark" and *Sherrod*'s "pivotal inquiry" are of particular relevance in evaluating whether a severance plan is governed by ERISA. *See, e.g., Rottler v. Mich. Auto. Compressor*, 673 F. Supp. 2d 560, 564 (E.D. Mich. 2009). In the court's view, the plan alleged in this case is most akin to a severance program, as it offers a benefit to employees leaving active service with an employer. In deciding whether ERISA governs this case, the court will therefore look to severance authority.

The Sixth Circuit "has used two particular factors to determine if a severance agreement plan meets the *Fort Halifax* criteria to determine if ERISA governs: 1) whether the employer has discretion over the distribution of benefits, and 2) whether there are on-going demands on an employer's assets." *Kolkowski*, 448 F.3d at 848. The court will presume that the second *Kolkowski* factor is satisfied in this case. The alleged plan necessitates ongoing expenditures by the employer to cover insurance premiums for an indefinite period of time, in contrast to a one-time, lump sum severance payment. *See, e.g., Rottler*, 673 F. Supp. 2d at 566-67.

8

The first *Kolkowski* prong (discretion over the distribution of benefits) is not satisfied, however. The plan, as alleged by plaintiff, may be distilled to the following: "If CBA determines that an employee is disabled, then FLEC will pay that employee's health insurance premiums unless and until CBA deems the employee no longer disabled. No additional forms must be filled out." The discretion thus lies with an outside source, CBA. FLEC, as plan administrator, simply writes the checks. "The Sixth Circuit has held that severance plans that involve '[s]imple or mechanical determinations' do not constitute ERISA plans." *Rottler*, 673 F. Supp. 2d at 565 (citing and quoting *Sherrod*, 33 F.3d at 638).

Comparison to the Sixth Circuit cases discussed herein is instructive. In *Sherrod*, the benefit plan at issue was not governed by ERISA because eligibility and benefit amount were predetermined. *Sherrod*, 33 F.3d at 639. In *Swinney*, the employer's plan *was* governed by ERISA because the employer was required to exercise a considerable amount of analysis and discretion.

> [D]etermining the eligibility for and level of each of these employee benefits requires the individualized decisionmaking which makes an ongoing administrative scheme a necessity. A cursory view of just one of the laid-off workers plans makes this point clear. Eligibility for and the level of SUB benefits, for example, are determined by 'Years of Seniority under the SUB Plan, the number of SUB Credit Units [the employee has], and the amount of money in the SUB fund.' . . . . Furthermore, to be eligible for benefits, the employee must show that he was either receiving government unemployment benefits, or had an acceptable reason for not receiving them. . . . Thus, determining each individual employee's benefits in the SUB benefit plan requires the employer to "analyze each employee's particular circumstances in light of the appropriate criteria." *Sherrod*, 33 F.3d at 638.

*Swinney*, 46 F.3d at 517 (internal citation and footnote omitted). Similarly, in *Kolkowski*,

> the plan administrator exercised discretion in determining benefits in two distinct ways, one more complex than the other. The administrator decided whether the benefits offered by an acquiring company were "at least comparable" to the prior benefits. The administrator also computed the seniority status of each employee in order to calculate the amount of severance pay and benefits due. The administrator's authority to evaluate and determine facts, including whether an employee's prior and prospective position have "at least comparable" benefits, is more than the simple, mechanical function that the Court encountered in *Sherrod*.

*Kolkowski*, 448 F.3d at 848-49.

By contrast, FLEC's administration of the instant benefit is no more than "simple and mechanical." An outside source (CBA) makes a related decision (LTD eligibility), and FLEC then periodically writes a check. "To do little more than write a check hardly constitutes the operation of a benefit plan." *Fort Halifax*, 482 U.S. at 12.

Again, ERISA governs only benefit *plans*, not mere *benefits*. *See id.* at 11-12. FLEC's "unwritten practice" of covering health insurance premiums is a benefit, but it is not a benefit plan under ERISA because the employer exercises insufficient discretion in the distribution of benefits. The court therefore has no jurisdiction over the single count contained in plaintiff's complaint, and this matter must be dismissed.

### B. Secondary Issues

The parties' remaining arguments (primarily their disputes over which documents make up the administrative record) are moot in light of the court's ruling that no ERISA plan exists. The court is nonetheless compelled to briefly address one issue disputed at length by the parties.

Plaintiff purports to have moved to amend his complaint to add an additional ERISA cause of action for statutory penalties under 29 U.S.C. § 1132(c). The defendants vigorously oppose the purported motion as untimely, but the issue is in fact much more simple than that.

*No motion was ever filed.* The alleged motion to amend is buried at page 20 of plaintiff's dispositive brief ("In the event that the court finds . . . , then Plaintiff moves to amend his complaint . . . ."). Such a filing, even if it were not otherwise mooted, would not be considered by this court. A motion must be filed as a separate, freestanding document.

III.

*Conclusion*

For the reasons provided herein, defendants' motion for judgment will be granted and plaintiff's motion for judgment will be denied. This civil action will be dismissed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge